IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARCY NAPIER,                              )
                                           )
                    Plaintiff,             )
                                           )
       v.                                  )       Civil Action No. 06-1368
                                           )
CITY OF NEW CASTLE,                        )       Judge Lancaster
ANTHONY LAGNESE,                           )       Magistrate Judge Hay
CHRISTOPHER BOUYE,                         )
JOHN DOE 1-10,                             )
                                           )
                    Defendants.            )

REPORT AND RECOMMENDATION

I.     RECOMMENDATION

       It is respectfully recommended that defendants' motion to dismiss or, in the

alternative, motion for partial summary judgment [Dkt. No. 4] be granted.

II.    REPORT

       Plaintiff, Marcy Napier, commenced this action under 42 U.S.C. § 1983, alleging

that defendants violated her civil rights when she was wrongfully arrested, jailed without proper

cause and subsequently prosecuted by defendants knowing that she was not the person that they

intended to arrest.

       According to the complaint, defendants Anthony Lagnese ("Lagnese") and

Christopher Bouye ("Bouye"), met with a confidential informant on or about June 17, 2004, to

set up a controlled drug buy.  Complaint ¶ 16.  Plaintiff alleges that the informant, who she

believes did not have a history of providing reliable information, informed defendants that the

drugs would be purchased from Marcy Napier.  Complaint ¶¶ 17, 18.  The drug buy was

subsequently executed by the informant under the observation of Lagnese whereby crack cocaine

was purchased from two women, one of which was reported by Lagnese as being Marcy Napier.

Complaint ¶¶ 19-21.

Thereafter, on or about October 1, 2004, Lagnese and a number of other officers

with riffles and police dogs arrived at plaintiff's home to effectuate her arrest.  Complaint ¶¶ 22-

25, 27.  Although plaintiff attempted to explain that a mistake had been made, and despite the

fact that Lagnese allegedly realized that plaintiff was not the person that they wanted to arrest,

defendants handcuffed plaintiff and took her out of the house where a crowd had gathered.

Complaint ¶¶ 28-31.  Plaintiff was transported to the police station where she was searched,

photographed and fingerprinted and subsequently taken to a local district justice for a preliminary

arraignment on charges of possession of crack cocaine and possession with intent to deliver.

Complaint ¶¶ 32, 34, 35.  Plaintiff was then transported to the Lawrence County Jail where, after

being strip searched and photographed, she remained for three days while counsel was retained

and bail, which had been set at $25,000.00, was secured from a bondsman.  Complaint ¶¶ 36-39.

Plaintiff further alleges that she subsequently appeared at the district justice's

office on five different occasions for a preliminary hearing only to learn each time that it was

being postponed.  Complaint ¶¶ 40-43.  On the sixth scheduled date, defendants allegedly offered

to dismiss the charges if plaintiff passed a polygraph test.  Plaintiff apparently took and passed

the test and the charges were, in fact, withdrawn.  Complaint ¶¶ 3, 43-46.

Plaintiff also contends that Bouye subsequently admitted to her that he knew she

was not involved in the crimes charged and that he had informed his superiors of that fact when

he learned that plaintiff had been arrested.  Complaint ¶ 46.  Plaintiff also complains that

defendants' actions were not only willful and malicious but that they were acting pursuant to the policies and/or customs of the City of New Castle which failed to properly train members of the police department.  Complaint ¶¶ 49-51.   As a result of the foregoing, plaintiff alleges that she not only lost her employment but that she was forced to expend funds to obtain her pretrial release from jail as well as retain an attorney and has suffered humiliation, embarrassment, distress, inconvenience, alarm and infringement of her privacy.  Complaint ¶¶ 52-54.

Plaintiff filed the instant complaint on October 12, 2006, bringing claims against all defendants under § 1983 for violating her rights under the First, Fourth, Sixth, Ninth and Fourteenth Amendments (Count I), and state law claims for false arrest (Count II), false imprisonment (Count III), assault and battery (Count IV), intentional infliction of emotional distress (Count V), invasion of privacy (Count VI), negligence (Count VII), malicious prosecution (Count VIII), and abuse of process (Count IX).  Defendants have now filed a motion to dismiss or, in the alternative, a motion for summary judgment, arguing that many of plaintiff's claims are barred by the applicable statute of limitations and/or are otherwise legally insufficient.

In reviewing a motion to dismiss under Rule 12(b)(6), all well pleaded allegations of the complaint must be accepted as true and viewed in a light most favorable to the non-movant.  Brader v. Allegheny General Hospital, 64 F.3d 869, 873 (3d Cir. 1995); Scrob v. Patterson, 948 F.2d 1402, 1405 (3d Cir. 1991).  The Court is not, however, required to accept as true unsupported conclusions and unwarranted inferences.  Schuylkill Energy Resources v. PP&L, 113 F.3d 405, 417 (3d Cir. 1997).  Thus, "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the motion to dismiss is properly granted.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972), quoting Conley v.

3

Gibson, 355 U.S. 41, 45-46 (1957).  The issue is not whether the plaintiff will prevail in the end

but only whether she should be entitled to offer evidence in support of her claim.  Scheuer v.

Rhodes, 416 U.S. 232, 236 (1974).

      Further, in resolving a 12(b)(6) motion, Courts are generally to consider only the

allegations set forth in the complaint, any exhibits submitted with the complaint and matters of

public record.  Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc., 998 F.2d

1192, 1196 (3d Cir. 1993), cert. denied, 510 U.S. 1042 (1994).  If matters outside the pleadings

are considered, under Rule 12(b)(6) the motion is properly converted to one for summary

judgment so that the plaintiff has an opportunity to respond.  Id.  The Court of Appeals for the

Third Circuit has created an exception to the general rule, however, holding that:

> a court may consider an undisputedly authentic document that a
> defendant attaches as an exhibit to a motion to dismiss if the
> plaintiff's claims are based on the document. . . . Otherwise, a
> plaintiff with a legally deficient claim could survive a motion to
> dismiss simply by failing to attach a dispositive document on
> which it relied.

Id.  See Beverly Enterprises, Inc. v. Trump, 182 F.3d 183, 190 n.3 (3d Cir. 1999),  cert. denied,

528 U.S. 1078 (2000).

      Here, to support their motion defendants have submitted a copy of an Incident

Investigation Report generated by Lagnese as a result of plaintiff's arrest (Exhibit A), an Incident

Investigation Report generated by Bouye summarizing the June 17, 2004 drug buy and the

subsequent withdrawal of the charges against plaintiff (Exhibit B), the Withdrawal of Criminal

Complaint form executed on March 24, 2005, and the Criminal Complaint and accompanying

Affidavit of Probable Cause filed against plaintiff (Exhibit D) [Dkt. No. 4].  In addition, plaintiff

has submitted a copy of the Motion for Dismissal of Criminal Charges and Expungement of

4

Record filed on plaintiff's behalf in the Court of Common Pleas of Lawrence County, Pennsylvania, in April of 2006 (Exhibit 1). Because neither side has disputed the authenticity of these documents, which, other than perhaps the incident reports, appear to be of public record, and because the allegations in the complaint appear to be based on these documents or revolve around the events reported therein, it appears that they are properly considered by the Court without converting the instant motion into one for summary judgment.

Defendants first argue that plaintiff's § 1983 claims and state common law claims for false arrest, false imprisonment, assault and battery, intentional infliction of emotional distress, abuse of process, and invasion of privacy should be dismissed because they are barred by the applicable statute of limitations.[1]

"An action brought under 42 U.S.C. § 1983 is subject to the state statute of limitations that governs actions for personal injury." Gibson v. Superintendent of New Jersey Dept. of Law and Public Safety, 411 F.3d 427, 435 (3d Cir. 2005), cert. denied, ___ U.S. ___,

---

[1]     We note here that defendants' categorization of plaintiff's claims as being brought pursuant to § 1983 and Pennsylvania common law appears to be an over simplification. False arrest and false imprisonment, for instance, are state law claims. To the extent that plaintiff has brought § 1983 claims predicated on the same facts, her claims are necessarily ones for unlawful arrest and unlawful imprisonment in violation of the Fourteenth Amendment. See Bell v. Brennan, 570 F. Supp. 1116, 117 (E.D. Pa. 1983), citing Cramer v. Crutchfield, 648 F.2d 943, 945 (4th Cir. 1981) ("[A] cause of action under § 1983 is not made out simply by asserting that a common law tort was committed by a state official. . . . Rather, a plaintiff must allege a deprivation of a federal right . . . .") (internal citation omitted). Because plaintiff has failed to set forth her § 1983 claims clearly, opting instead to lump them together in one paragraph without delineating what constitutional amendment is implicated by the alleged violations, she has left defendants and the Court to surmise what claims are viable under § 1983. It nevertheless appears that the statute of limitations arguments made by defendants, as they have suggested, apply to both plaintiff's state law claims and to any corresponding § 1983 claim that may be implicated.

126 S. Ct. 1571 (2006) ("Gibson").  It is undisputed that in Pennsylvania, 42 Pa. C.S.A. §

5524(1), (2), & (7) govern personal injury claims for false arrest, false imprisonment, assault and

battery, intentional infliction of emotional distress, and abuse of process and provide that such

actions must be commenced within two years.  Nor is it disputed that actions for invasion of

privacy are governed by a one year statute of limitations.  42 Pa. C.S.A. § 5523(1).  What is in

dispute, however, is when the statute of limitations in this case began to accrue.

   In Pennsylvania, the limitations period begins to run from the time the plaintiff

suffers the injury or has reason to know of the injury.  Morgan v. Johns-Manville Corp., 354 Pa.

Super. 58, 61-62, 511 A.2d 184, 186, allocatur denied, 514 Pa. 636, 522 A.2d 1105 (1986).

Federal law, however, governs the date of accrual for claims brought under § 1983.  Gibson, 411

F.3d at 435, citing Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998).  See Wallace v.

Kato, ___ U.S. ___, ___, 127 S. Ct. 1091, 1095 (2007) ("Wallace").  Under federal law, much

like in Pennsylvania, "[g]enerally, 'the limitations period begins to run from the time when the

plaintiff knows or has reason to know of the injury which is the basis of the section 1983

action.'" Gibson, 411 F.3d at 435, quoting Montgomery v. De Simone, 159 F.3d at 126.  See

Wallace, 127 S. Ct. at 1095 ("[I]t is the standard rule that [accrual occurs] when the plaintiff has

a complete cause of action ... that is, when the plaintiff can file suit and obtain relief") (internal

quotations and citations omitted).

   Here, citing to a number of cases from within the Third Circuit, defendants

contend that the statute of limitations on plaintiff's claims for false imprisonment and false arrest

accrued on the date of her arrest since plaintiff knew at that time that she was innocent of the

charges brought against her and, thus, knew of her injuries.  See Montgomery v. De Simone, 159

F.3d at 126; <u>Rose v. Bartle</u>, 871 F.2d 331, 350 (3d Cir. 1989); <u>Cooper v. Muldoon</u>, 2006 WL

1117870 *3 (E.D. Pa. April 26, 2006).  <u>See also</u> <u>Moore v. McComsey</u>, 313 Pa. Super, 264, 268-

69, 459 A.2d 841, 843 (Pa. Super. 1983).  Because plaintiff was arrested on October 1, 2004,

defendants argue that the statute of limitations expired on October 1, 2006, and that plaintiff's

claims, which were not filed until October 12, 2006, are therefore untimely.

    Plaintiff does not dispute that the Court of Appeals for Third Circuit has held that

the statute of limitations for claims for false arrest and false imprisonment accrue at the time of

arrest and detention but nevertheless asks the Court to adopt a contrary rule whereby the statute

of limitations begins to run at the time the underlying charges are dismissed, which, in this case,

was March 24, 2005, and would render plaintiff's claims timely.  <u>See</u> Plaintiff's Exhibit 1-A

[Dkt. No. 10].  In so arguing, plaintiff notes that the United States Supreme Court granted

<em>certiorari</em> in <u>Wallace v. City of Chicago</u>, 440 F.3d 421 (7th Cir.), <u>cert. granted</u>, ___ U.S. ___, 126

S. Ct. 2891 (2006), on this precise issue.  Indeed, in <u>Wallace</u>, the Seventh Circuit, like the Third

Circuit, found that the statute of limitations for claims of false arrest and false imprisonment

begin to run at the time of arrest and that because Wallace's claims were filed more than two

years after his arrest, they were barred.  Apparently, because the Supreme Court granted

Wallace's certiorari petition, wherein he noted that several other federal appeals courts have held

that the limitations period begins to run when the underlying charges are dismissed, plaintiff was

confident that the Seventh Circuit would be reversed and asked this Court to adopt the contrary

rule.

    Unfortunately for plaintiff, <u>Wallace</u> was decided by the Supreme Court on

February 21, 2007, a fact which plaintiff neglected to inform the Court of, and affirmed the

Seventh Circuit's finding that Wallace's claims were time barred, holding that the statute of limitations on his claims for false arrest and false imprisonment began to run when he appeared before the examining magistrate and was bound over for trial.  Wallace v. Kato, ___ U.S. ___, ___, 127 S. Ct. 1091, 1097 (2007).  In so holding, the Court reasoned that:

> [r]eflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process-when, for example, he is bound over by a magistrate or arraigned on charges. Thereafter, unlawful detention forms part of the damages for the "entirely distinct" tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process.  "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more.  From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself."  Thus, petitioner's contention that his false imprisonment ended upon his release from custody, after the State dropped the charges against him, must be rejected. It ended much earlier, when legal process was initiated against him . . . .

Id. at 1096 (internal citations omitted).

It therefore appears that under Supreme Court precedent as well as that of the Third Circuit, the statute of limitations on plaintiff's claims for false arrest and false imprisonment accrued when she appeared before the local district justice for a preliminary arraignment and was bound over for trial, which plaintiff does not dispute occurred on October 1, 2004.  As such, she was obligated to file her claims for false arrest and false imprisonment by October 1, 2006.  Having failed to do so those claims are time barred and defendants' motion to dismiss in this regard is properly granted.[2]

---

[2]        Plaintiff has also suggested that under the Supreme Court's ruling in Heck v. Humphrey, 512 U.S. 477 (1994), her claims for false arrest and

8

Defendants also argue that plaintiff's claims for abuse of process and intentional infliction of emotional distress are properly dismissed since the two year statute of limitations applicable to those claims accrue on the date of arrest which, as already discussed, in plaintiff's case, was more than two years before her claims were filed.  With respect to her claim for abuse of process, plaintiff counters arguing that defendants' continued prosecution of her knowing that she was improperly arrested was on-going conduct to which the continuing violation doctrine applies and that the tort of abuse of process necessarily involves acts engaged in subsequent to the filing of the criminal proceedings.  Plaintiff therefore contends that her claims were timely brought since the complaint was filed within two years of those subsequent or "continued" acts. The Court, however, believes that plaintiff has failed to state a claim for abuse of process in the first instance, and hence the claim is properly dismissed without reaching the statute of limitations issue.

As plaintiff has acknowledged, a claim for abuse of process differs from a malicious prosecution claim in that a malicious prosecution claim has to do with the wrongful initiation of the legal process, i.e., without probable cause and with a bad motive, whereas an

---

false imprisonment could not accrue until the charges against her were dropped.  This precise argument, however, was squarely rejected by the Supreme Court in Wallace as well.  Id. at 1097-1098.  Moreover, we note that plaintiff has encouraged the Court to apply what is known as the "Hazeltine Rule" to her claims which would also render them timely. As plaintiff acknowledges, however, that rule, set forth in Zenith Radio Corp. V. Hazeltine Research, Inc., 401 U.S. 321 (1971), allows a plaintiff to recover provable damages that will flow in the future in the context of a continuing conspiracy to violate antitrust laws.  Id. at 338-39.  Given the lack of authority for plaintiff's proposition that the rule should be applied to claims for false arrest and false imprisonment in a § 1983 action and in light of the controlling authority discussed above, we decline to adopt plaintiff's argument or give it further attention.

abuse of process arises when a prosecution is initiated legitimately but "thereafter is used for a purpose other than that intended by law." Jennings v. Shuman, 567 F.2d 1213, 1217 (3d Cir. 1977). See Rosen v. American Bank of Rolla, 426 Pa. Super. 376, 381, 627 A.2d 190, 192 (1993) ("Malicious use of civil process has to do with the wrongful initiation of such process, while abuse of civil process is concerned with a perversion of a process after it is issued"). While it is true that the two torts are not mutually exclusive and that both may lie where a process is both wrongfully initiated and thereafter perverted for some unlawful purpose, Jennings v. Shuman, 567 F.2d at 1218, 1219,  it is also true that merely continuing to pursue a claim that was initiated with malice does not transform a malicious prosecution claim into an action for abuse of process.  Evans v. Durham Life Insurance Co., 2001 WL 770803 *2 (E.D. Pa. 2001) ("Evans").

        Indeed, to support her abuse of process claim, the plaintiff in Evans, much like the instant plaintiff, alleged that the process complained of was "the entire litigation brought and continued against [her]."  Id.  The United States District Court for the Eastern District of Pennsylvania found that such assertions implicate a malicious prosecution claim and not an abuse of process claim.  Id.  In so holding, the Court relied on a Pennsylvania Superior Court case in which it was held that, "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions."  Id., quoting Al Hamilton Contracting Co. v. Cowder, 434 Pa. Super. 491, 499, 644 A.2d 188, 192 (1994).  See Rosen, 627 A.2d at 192, quoting Restatement (Second) of Torts, § 682, comment b (Finding that "there is no action for abuse of process when the process is used for the purpose for

which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant. . . .").

In the instant case, to support her claim for abuse of process plaintiff has alleged that defendants used a legal process against her when they initiated criminal charges against her, that they did so for the purpose of a coercing plaintiff to giving up her rights and to avoid embarrassment for arresting the wrong person, that defendants' actions in arresting plaintiff and filing the charges against her caused her significant harm and that defendants concealed and misrepresented the correct information from the appropriate authorities so that the criminal charges could go forward.  Complaint ¶ 68.  Plaintiff's claim therefore appears to be premised on defendants having initiated the criminal action to conceal the fact that the wrong person was identified as selling drugs which, as found by the Court in <u>Evans</u>, appears to implicate a claim for malicious prosecution and not abuse of process.[3]  The fact that defendants then carried out the process by continuing to prosecute plaintiff, even if with bad intentions or an ulterior purpose, does not, in our view, constitute a subsequent perversion of the process or transform plaintiff's claim for malicious prosecution into one for abuse of process.  As such, plaintiff has failed to state a claim for abuse of process and that claim is properly dismissed.

With respect to plaintiff's claim for intentional infliction of emotional distress, plaintiff does not dispute that a two year statute of limitations applies but argues that the tort accrues when the extreme conduct occurs and not, as defendants have argued, when the criminal

---

[3]        Indeed, plaintiff's malicious prosecution claim is supported by these
same assertions.  <u>See</u> Complaint ¶ 67.

proceedings are instituted.[4]  Plaintiff then asserts that the extreme conduct at issue in this case is the continued prosecution of her and that because of the on-going nature of the tort the continuing violation theory applies rendering her complaint timely.

Plaintiff has alleged in the complaint, however, that she suffered extreme emotional distress "[a]s the result of having her house surrounded by a battery of rifle bearing police officers, some of whom had police dogs, the invasion of her home by the police and being arrested, handcuffed, strip searched, locked in jail and wrongfully charged with abhorrent criminal conduct . . . ."  Complaint ¶ 63.  Thus, according to plaintiff's own pleading the outrageous conduct of which she complains and which caused her emotional distress is that surrounding her arrest, the initiation of the criminal proceedings and the three days she spent incarcerated and not the subsequent or continued prosecution of her.  See Commonwealth of Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (A complaint may not be amended by the briefs in opposition to a motion to dismiss).  Moreover, it is difficult to see how continuing to prosecute a person knowing they were wrongly charged is any more outrageous than initiating the unlawful criminal proceedings in the first instance.  As such, if, as plaintiff has argued, the statute of limitations accrued on the date that the outrageous

---

[4]     "To prove a claim of intentional infliction of emotional distress, the following elements must be established: (1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; (4) that distress must be severe."  Doe v. Liberatore, 478 F. Supp. 2d 742, 765 (M.D. Pa. 2007), quoting Hoy v. Angelone, 456 Pa. Super. 596, 610, 691 A.2d 476, 482 (1997).  "Extreme and outrageous conduct is conduct which is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'"  Id., quoting Strickland v. University of Scranton, 700 A.2d 979, 987 (Pa. Super. 1997).

conduct occurred, it appears that the statute of limitations on plaintiff's claim for intentional infliction of emotional distress accrued on the date of plaintiff's arrest and incarceration which was on October 1, 2004.  See Deary v. Three Un-Named Police Officers, 746 F.2d 185, 193, 197 (3d Cir. 1984) ("A cause of action for abuse of process or infliction of emotional distress would necessarily accrue on the same date as a cause of action for false arrest, since on that date [plaintiff] would have reason to know of the injury which those two torts encompass"); Johnson v. City of Philadelphia , 1997 WL 152790 *3  (E.D. Pa. March 28, 1997) (Finding that plaintiff's state law claim for intentional infliction of emotional distress accrued on the date of arrest).

Defendants also contend that because plaintiff's claims for assault and battery are premised on the three days that she spent in jail following her arrest the two year statute of limitations period began to run at the latest on October 4, 2004, when she was released from jail and that her complaint as to these claims, filed on October 12, 2006, is untimely as well.  We agree.

Under Pennsylvania law, an assault is an act intended to put another person in imminent apprehension of harmful or offensive bodily contact.  Lakits v. York, 258 F. Supp. 2d 401, 407 (E.D. Pa. 2003).  See Cucinotti v. Ortmann, 399 Pa. 26, 27, 159 A.2d 216, 217 (1960) (An assault is "*an act* intended to put another person in reasonable apprehension of an immediate battery, and which succeeds in causing an apprehension of such battery") (emphasis in original). Thus, a cause of action for assault accrues at the time the plaintiff apprehends imminent contact. See E.J.M. v. Archdiocese of Philadelphia, 1992 WL 551667 *2 (Pa. Com. Pl. July 16, 1992).

Here, the only offensive physical contact and/or restraint of which plaintiff complains is that relating to the three days that she spent in jail following her arrest.  Because

plaintiff was released from jail on October 4, 2004, the statute of limitations accrued on that date

at the very latest.  As such, the statute of limitations expired on October 4, 2006, and her claims

for assault and battery, filed eight days after that, are barred.

Plaintiff nevertheless argues that her claims were timely filed since the assault of

which she complains was the continued prosecution of the criminal case against her which placed

her in apprehension of incarceration at any time.  Because the threat of incarceration was on-

going, plaintiff contends that the limitations period did not begin to run until the threat ended,

which was when the charges brought against her were dismissed.  We disagree.

As previously discussed, an element of civil assault is the intention to put another

person in apprehension of an immediate battery or harmful or offensive bodily *contact*.  Lakits v.

York, 258 F. Supp. 2d at 407; Cucinotti v. Ortmann, 159 A.2d at 217.  See Dalrymple v. Brown,

549 Pa. 217, 229, 701 A.2d 164, 170 (1997) (Battery requires " a harmful or offensive *contact*")

(emphasis added).  Indeed, it is well settled in Pennsylvania, that "words or threats alone are

insufficient to put a person in reasonable apprehension of physical injury or offensive touching."

Kahle v. Glosser Bros., Inc., 462 F.2d 815, 817 n. 4 (3d Cir. 1972).  See Cucinotti v. Ortmann,

159 A.2d at 217 ("Words in themselves, no matter how threatening, do not constitute an assault;

the [defendant] must be in a position to carry out the threat immediately, and he must take some

affirmative action to do so").

It would therefore appear that the mere threat of incarceration is not sufficient to

put a person in imminent apprehension of physical injury and does not constitute an assault.  See

Ray v. Abington Township, 2004 WL 1175737 * 3 (E.D. Pa. May 25, 2004) (Finding no

authority for the proposition that the threat of imprisonment is properly considered an assault

14

since it could not cause imminent apprehension of harmful bodily contact).  Thus, to the extent

that plaintiff has alleged an assault at all, it necessarily pertains to the period of time that she was

incarcerated following her arrest.  Because she was released from that incarceration over two

years before she filed the instant complaint, those claims are barred by the statute of limitations

and defendants' motion to dismiss in this regard is properly granted.

Next, it appears that plaintiff's claim for invasion of privacy, which, as previously

discussed, is subject to a one year statute of limitations, is also time barred.  See 42 Pa. C.S.A §

5523(1).  As argued by defendants, it appears that plaintiff's claim is based on their alleged

intrusion into her home when she was arrested on October 1, 2004.  See Complaint ¶ 65.

Because plaintiff would have known of the intrusion at that time, her cause of action accrued on

that date.  See Barnes v. Fraley, 1998 WL 316031 *1, *3 (E.D. Pa. June 4, 1998); Barnes v. City

of Coatesville, 1993 WL 259329 *5 (E.D. Pa. June 28, 1993), aff'd, 61 F.3d 813 (3d Cir. 1995).

Plaintiff, however, did not file her complaint until October 12, 2006, which was over two years

later, rendering it untimely.[5]  Defendants' motion to dismiss with respect to plaintiff's claim for

invasion of privacy should therefore be granted as well.

At this juncture, then, the only claims remaining are plaintiff's claims for

malicious prosecution brought under both state law and § 1983, presumably as a violation of the

substantive due process clause of the Fourteenth Amendment, and a claim for negligence.

Defendants have acknowledged that plaintiff has properly stated a claim against the defendants

---

[5]    Notably, plaintiff has not addressed defendants' argument in this regard
and, thus, has seemingly conceded the issue.

for malicious prosecution under § 1983,[6] but nevertheless contend that plaintiff's common law

tort claim is properly dismissed against the City of New Castle because it is immune from suit

under Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. C.S. § 8241, *et seq.* ("the

Act").[7]  Plaintiff has not addresses this issue in her brief and, therefore, has seemingly conceded

---

[6]     More accurately, defendants have simply not disputed that plaintiff has
stated a § 1983 malicious prosecution claim against the individual
defendants and, referring to paragraph 50 of the complaint, have
conceded that plaintiff has properly stated what they refer to as a
"Monell claim" against the City of New Castle.  See Monell v. New
York City Dept. of Social Services, 436 U.S. 658, 690 (1978) (Finding
that although a  municipality may not be held liable under § 1983 merely
because its employees have acted unconstitutionally, liability may be
imposed on municipalities for their own illegal acts or where the
plaintiff is able to identify a municipal "policy" or "custom" that caused
the constitutional violation).  Here, plaintiff has alleged in the complaint
that the City of New Castle failed to train the members if its police
department on the proper procedures of determining when an arrest has
been wrongfully made and what action to take when that occurs.
Complaint ¶ 50.  She has also alleged that defendant Bouye admitted to
her that he knew that she could not have been involved in the charged
criminal conduct and that he informed his supervisors of that when he
learned of her arrest, and that the conduct of the individual officers was
"intentional, reckless, willful, malicious and undertaken with disregard
for [plaintiff's] known and established rights" and engaged in "pursuant
to the policies, practices, procedures and/or customs of Defendant City
of New Castle."  Complaint ¶¶ 46, 49, 51.  Thus, it appears that plaintiff
has properly stated a claim against the City of New Castle as well as the
individual officers under § 1983.  See Woloszyn v. County of Lawrence,
396 F.3d 314, 324 (3d Cir. 2005), quoting Colburn v. Upper Darby
Township, 946 F.2d 1017, 1028 (3d Cir. 1991) (Municipal liability can
be based on a municipality's failure to train its employees, it will be held
liable only where the failure to train "amounts to 'deliberate indifference
to the [constitutional] rights of persons with whom the police come in
contact'").

[7]     Although plaintiff's other state law tort claims for false arrest, false
imprisonment, assault and battery, intentional infliction of emotional
distress, invasion of privacy and abuse of process have already been
dismissed as barred by the applicable statute of limitations or under Rule
12(b)(6), defendants' argument here is applicable to those claims as
well.

16

the issue.  Nevertheless, the Court notes that under the Act, "no local agency shall be liable for any damages on account of any injury to person or property cause by an act of the local agency or an employee thereof or any other person."  42 Pa. C.S. § 8541.  Although the statute enumerates eight specific exceptions to this rule, none of them applies here.  42 Pa. C.S. § 8542(b).[8]  See Verde v. City of Philadelphia, 862 F. Supp. 1329, 1337 (E.D. Pa. 1994) (The eight enumerated exceptions to immunity provide the sole categories of liability for local agencies).  See also Wakshul v. City of Philadelphia, 998 F. Supp. 585, 588 (E.D. Pa. 1998) (Finding that the willful conduct exception to immunity found in section 8550 only abrogates the immunity afforded individual employees and not that afforded the local agencies which employ them).   It therefore appears that plaintiff's state law claim for malicious prosecution is properly dismissed against the City of New Castle.

Finally, defendants argue that plaintiff's state law claim of negligence is properly dismissed as against all the defendants because the negligence of which plaintiff complains does not fall under any of the enumerated exception to governmental immunity set forth in § 8542(b) of the Act either.  Plaintiff has again failed to counter plaintiff's argument in this regard and, thus, has apparently conceded that her negligence claim should be dismissed.

Indeed, under the Act, an employee of a local agency enjoys the same immunity as the agency itself.  42 Pa. C.S. § 8545.  See 42 Pa. C.S. § 8541.  Thus, as already discussed,

---

[8]     Those exceptions are where the agency or an employee thereof was acting within the scope of his duties with respect to: 1) vehicle liability; 2) care, custody, or control of personal property; 3) real property; 4) trees, traffic controls and street lighting; 5) utility service facilities; 6) streets; 7) side-walks; and 8) care, custody, or control of animals.  42 Pa. C.S. § 8542(b)

17

defendants are immune from suit unless the negligence complained of occurred while defendants were performing their duties in one of the eight categories enumerated in § 8542(b).[9]  Because none of the actions which provide the basis for plaintiff's negligence claim falls into any of the eight exceptions, that claim is properly dismissed as well.  See Complaint ¶¶ 66a-g.

        For these reasons, it is recommended that defendants' motion to dismiss or, in the alternative, motion for partial summary judgment [Dkt. No. 4] be granted.[10]

        Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and Recommendation.  Any party opposing the objection shall have sev3en (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

                                        Respectfully submitted,

                                        /s/  Amy Reynolds Hay
                                        United States Magistrate Judge


Dated: 30 May, 2007

cc:     Hon. Gary L. Lancaster
        United States District Judge

cc:     All counsel of record by Notice of Electronic Filing

---

[9]     See Footnote 7, supra.

[10]    As such, the only claims remaining are plaintiff's § 1983 claim for malicious prosecution against all defendants and her state law claim for malicious prosecution against the individual defendants.