IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| MARCY NAPIER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 06-1368 |
| CITY OF NEW CASTLE, | ) | Judge Lancaster |
| ANTHONY LAGNESE, | ) | Magistrate Judge Hay |
| CHRISTOPHER BOUYE, | ) | |
| JOHN DOE 1-10, | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION

I. RECOMMENDATION

Plaintiff, Marcy Napier ("Napier"), commenced this action under 42 U.S.C. § 1983, alleging that defendants violated her civil rights when they wrongfully arrested and jailed her without proper cause knowing that she was not the person that they intended to arrest. Defendants have now filed a motion for summary judgment arguing that they are entitled to judgment as a matter of law on Napier's malicious prosecution claims because she has failed to adduce sufficient facts during discovery to support these claims. For the reasons that follow, it is respectfully recommended that defendants' motion for summary judgment [Dkt. 34] be granted.

II. REPORT

A. Factual and Procedural Background

On June 17, 2004, defendants Christopher Bouye ("Bouye") and Anthony Lagnese ("Lagnese"), members of the narcotics unit within the City of New Castle's Police Department, met with a confidential informant ("CI"), who defendants had successfully used on three prior

occasions, in order to conduct some drug busts in the South Side area. When the CI arrived at the police station he supplied the names of "Marie Napier" or "Marcy Napier" and "Michael Buxton" as two people that he could make buys from that day.[1] Lagnese then drove the CI to the Big Run Projects and witnessed the CI purchase $60.00 worth of crack cocaine from a woman believed to be Marie or Marcy Napier and another woman named Debbie Brown. Lagnese testified that he had the opportunity to see the face of the seller and that when he subsequently compared the woman he observed selling the drugs to the J-Net photos of Marcy Napier it appeared to him that they were the same person. As such, Bouye and Lagnese filed criminal charges against Napier and on October 1, 2004, Napier was arrested at her home pursuant to an arrest warrant.

Lagnese, who was in a car somewhere on the block and observed Napier being taken from her residence and put into a police vehicle, testified that he noticed a difference in Napier's hair style and weight since June 17th when the drug buy occurred. According to defendants, Lagnese conveyed his observations to Bouye when he returned to the police station and they discussed that changes in appearance do occur given the lapse in time between the drug buy and Napier's arrest. Napier, however, maintains that Bouye subsequently admitted to her that Lagnese knew that she was not the woman from whom the CI bought the drugs at the time of

---

[1] Although Bouye testified that the CI gave them the name of Marcy Napier, the Initial Investigative Report indicates that the CI used the name Marie Napier. Lagnese, however, testified that the CI gave them both names. [Bouye Depo., p. 36 (Dkt. 41, Exh. A); Lagnese Depo., pp. 38-39 (Dkt. 41, Exh. B); June 17, 2004 Initial Investigative Report, ¶ 15 (Dkt. 40-4)].

her arrest but did nothing. Following her arrest, Napier was transported to the Lawrence County Jail where, after being stripped searched and photographed, she remained for three days.

Plaintiff's preliminary hearing was initially scheduled for October 7, 2004, at which time Napier's counsel discussed the apparent misidentification with the Assistant District Attorney and, in a letter dated October 14, 2004, indicated to the Assistant District Attorney that Napier would be willing to take a lie detector test. Thereafter, the preliminary hearing was postponed on a number of occasions and on March 15, 2005, plaintiff was given and passed a polygraph examination. The charges were withdrawn by the District Attorney's Office on March 24, 2005.

Napier filed the instant complaint on October 12, 2006, bringing claims against all defendants under § 1983 for violating her rights under the First, Fourth, Sixth, Ninth and Fourteenth Amendments (Count I), and state law claims for false arrest (Count II), false imprisonment (Count III), assault and battery (Count IV), intentional infliction of emotional distress (Count V), invasion of privacy (Count VI), negligence (Count VII), malicious prosecution (Count VIII), and abuse of process (Count IX). Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Partial Summary Judgement on November 21, 2006, arguing that the majority of Napier's claims were either barred by the applicable statute of limitations or failed to state a claim upon which relief could be granted. A Report and Recommendation, recommending that defendants' motion be granted, was filed on May 30, 2007, and was adopted as the Opinion of the Court by District Court Judge Gary L. Lancaster on July 3, 2007, over Napier's objections. As a result, the only claims remaining are Napier's

claims for malicious prosecution brought under § 1983 against all defendants and a state law claim for malicious prosecution against the individual defendants.

B.   Standard of Review

Summary judgment is warranted only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986). See Conoshenti v. Public Service Electric & Gas Company, 364 F.3d 135, 140 (3d Cir. 2004). When the moving party has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The mere existence of some evidence favoring the non-moving party, however, will not defeat the motion. There must be enough evidence with respect to a particular issue to enable a reasonable jury to find in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). See McGreevy v. Stroup, 413 F.3d 359, 363-64 (3d Cir. 2005). In evaluating the evidence at the summary judgment stage, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Matreale v. New Jersey Dept. of Military & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007), cert. denied, ___ U.S. ___, 128 S. Ct. 899 (2008).

C.   Discussion

To sustain a § 1983 malicious prosecution claim under the Fourth Amendment a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal

4

proceeding ended in his or her favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007), citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).[2] Similarly, to prove a claim for malicious prosecution relating to a criminal prosecution under state common law, a plaintiff must demonstrate that: (1) the defendant instituted proceedings against the plaintiff; (2) without probable cause; (3) with malice; and (4) that the proceedings were terminated in favor of the plaintiff. Corrigan v. Central Tax Bureau of Pa., Inc., 828 A.2d 502, 505 (Pa. Cmwlth. 2003), citing, Turano v. Hunt, 631 A.2d 822, 824 (Pa. Cmwlth. 1993).

  Defendants acknowledge that there are sufficient facts of record to show that Napier was seized within the meaning of the Fourth Amendment and that the criminal proceedings were terminated in her favor, but argue that they are entitled to summary judgment because Napier is unable to establish that she was arrested without probable cause or that defendants acted maliciously or for a purpose other than bringing her to justice.

  Probable cause exists when "the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe that an offense has

---

[2] 42 U.S.C. § 1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

5

been or is being committed by the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995). See Johnson v. Campbell, 332 F.3d 199, 211 (3d Cir. 2003). "The validity of the arrest is not dependent on whether the suspect actually committed any crime, and 'the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant.'" Id., quoting Michigan v. DeFillippo, 443 U.S. 31, 36 (1979). Rather, the question is "whether, looking at the totality of the circumstances at the time of the arrest, 'the objective facts available to the officers ... were sufficient to justify a reasonable belief that an offense [had been] committed.'" Id., quoting United States v. Glasser, 750 F.2d 1197, 1206 (3d Cir. 1984).

Here, the facts available to defendants at the time of Napier's arrest are that a confidential informant, who defendants had used on three prior occasions with successful prosecutions, came to the police station at a previously arranged time in order to conduct some drug busts in the South Side area of New Castle. [Bouye Depo., pp. 33-35, 43-44 (Dkt. 41: Exh. A); Lagnese Depo., pp. 36-37 (Dkt. 41: Exh. B)]. When the CI arrived, he supplied the names of "Marcy Napier" or "Marie Napier" and "Michael Buxton" as two people that he could make buys from that day. [Bouye Depo., p. 36; Lagnese Depo., pp. 38-39]. Following the buy at issue, the CI reported that he had purchased $60.00 worth of crack cocaine from Marie Napier. [Lagnese Depo., p. 45; June 17, 2004 Initial Investigative Report, ¶ 15 (Dkt. 40-4)]. As well, Lagnese, who had driven the CI to the Big Run Projects and observed the buy, testified that he had the opportunity to see the face of the seller and that when he subsequently compared the woman he observed selling the drugs to the J-Net photos of Marcy Napier it appeared to him that they were the same person. [Lagnese Depo., p. 46; Buoye Depo., p. 50]. Lagnese stated that he specifically based his opinion on the size of her head, the shape of her face and mouth and her hairline.

6

[Lagnese Depo. p. 47]. Although it is not clear when, Lagnese testified that Napier's J-Net photograph was also shown to the CI. [Lagnese Depo., p. 46].

These facts, in our view, are more than sufficient to have permitted a reasonable person to believe that Marcy Napier was the individual who participated in the drug buy witnessed by defendant Lagnese on June 17, 2004.[3] As such, the officers had probable cause for her arrest which is fatal to Napier's claims for malicious prosecution. See Wright v. City of Philadelphia, 409 F.3d 595, 603-04 (3d Cir. 2005) (Finding that the existence of probable cause for the plaintiff's arrest disposes of her § 1983 malicious prosecution claim); Strickland v. University of Scranton, 700 A.2d 979, 984 (Pa.Super. 1997) ("A showing of probable cause to institute proceedings against a plaintiff establishes an absolute defense against an action for malicious prosecution").

Indeed, Napier appears to concede as much having argued in her brief that "the issue of probable cause for the arrest of Plaintiff is not of concern," and that "it is the events that took place after the arrest and the subsequent prosecution that are of importance because the arresting Officers, Defendant Buoye and Defendant Lagnese[,] withheld information from the District Attorney." [Pl.'s Brief, pp. 14-15 (Dkt. 38)]. In so arguing, Napier relies exclusively on the language in the footnote of an unpublished opinion from the United States District Court of the Eastern District of Pennsylvania in which the court states that, "[w]hen a prosecutor elects to proceed, a police officer may be liable for malicious prosecution only if he knowingly or with

---

[3] Moreover, Napier acknowledges that in one of her driver's license pictures, she looks "exactly like" Georgia Marie Murphy, a known drug dealer in the area. [Napier Depo., pp. 74-76, 77-78, 80, 81 (Dkt. 41, Exh. D)].

7

reckless disregard for the truth concealed exculpatory evidence from or provided false or misleading reports to the prosecutor or otherwise interfered with the prosecutor's ability to exercise independent judgment." Vassallo v. Timoney, 2001 WL 1243517, at *7 n.8 (E.D. Pa. Oct. 15, 2001) ("Vassallo"). The Vassallo decision, however, does not appear to further Napier's position.

Indeed, in Vassallo, the court not only reaffirmed that under Third Circuit precedent the presence of probable cause is fatal to a § 1983 malicious prosecution claim but granted summary judgment in the defendants' favor because the evidence of record demonstrated that there was ample probable cause to charge the plaintiff. Id. at *7 n.7, *8.

Moreover, the footnote cited by Napier appears in the portion of the memorandum in which the court is discussing the plaintiff's claims for malicious prosecution and false arrest brought against members of the Philadelphia Police Department. While police officers effectuate arrests and, thus, are the proper defendants when bringing a claim for false arrest, it is typically a prosecutor who initiates a criminal prosecution for purposes of a malicious prosecution claim. See Zeglen v. Miller, 2008 WL 696940, at *8 (M.D. Pa. March 12, 2008), quoting Houston v. City of Philadelphia, 2077 U.S. Dist. LEXIS 40026 at *20 (E.D. Pa. May 31, 2007). Because the federal authorities who made the decision to indict and prosecute Vassallo were not defendants in that case it appears that the court was simply clarifying that a police officer -- and, thus, the defendants -- may also be liable for malicious prosecution where they mislead the prosecutor into believing that probable cause to initiate the criminal proceeding exists when, in fact, it does not. Indeed, in granting summary judgment the court not only found that ample probable cause existed to charge Vassallo, but also noted that there was no competent evidence of record to

8

support a finding that the officers knowingly misled the federal authorities in making their "decision to indict and prosecute." Id. at *8. Thus, Vassallo does not negate the proposition that the existence of probable cause to arrest is fatal to a malicious prosecution claim.

Although it cannot be disputed that a police officer has an on-going duty after an arrest has been made with probable cause to divulge exculpatory evidence to the prosecutor, Napier has not pointed to any competent evidence from which a jury could conclude that Officer Lagnese knew or recklessly disregarded the fact that she was not the person who participated in the drug buy when she was arrested. At most, the evidence demonstrates that on October 1, 2004, as Napier was being escorted from her house to the police vehicle, Officer Lagnese, who was sitting in a car somewhere "on the street on the block of projects," took note of the fact that her hair was styled differently and there was a "difference weight-wise" than on June 17, 2004 - over three months earlier. [Lagnese Depo., p. 48]. Contrary to Napier's argument, however, a noted difference in appearance is not the equivalent of knowing that Napier was not the woman who engaged in the drug buy and does not negate the fact that there was probable cause for Napier's arrest. See Vassallo, 2001 WL 1243517, at *7 ("An officer who has probable cause to arrest is not required to conduct further investigation for exculpatory evidence or to pursue the possibility that the suspected offender is innocent"). See also Logsdon v. Hains, 492 F.3d 334, 341 (6th Cir. 2007), cert. denied, ___ U.S. ___, 129 S. Ct. 35 (2008) ("[A]fter the officer determines, on the basis of the facts and circumstances known to him, that probable cause exists, the officer has no further duty to investigate or to search for exculpatory evidence").

Nor has Napier pointed to any evidence which would suggest that defendants subsequently acted with reckless disregard for the fact that Napier was not the woman who

9

participated in the drug buy.[4] Not only did Officer Lagnese testify that the difference in weight was "not substantial," but rather than disregard it, he discussed the fact that "Marcy looks different" with Bouye. [Lagnese Depo., pp. 48-49]. They concluded, however, that "changes in appearance do occur," particularly given the lapse of time between the drug transaction and Napier's arrest. Id. Nothing about this testimony suggests that either Bouye or Lagnese had serious doubts or an obvious reason to doubt that Napier was the woman who participated in the drug buy having identified her from her J-Net photograph on the day of the drug buy.

Napier nevertheless argues that there is sufficient evidence from which a jury could conclude that defendants knew or recklessly disregarded the fact that she was the wrong person so as to preclude summary judgment. That evidence consists solely of Napier's own deposition testimony wherein she recounts a conversation she allegedly had with Bouye after she had taken and passed the polygraph test. Specifically, Napier argues that Bouye told her at a meeting that Lagnese had told him that he (Lagnese) realized on the day of Napier's arrest that she was not the woman who participated in the drug deal, and that when she asked Bouye why Lagnese did not speak up, Bouye told her that Lagnese didn't want to be embarrassed in front of his peers. [Napier Depo., p. 66]. This evidence, in our view, is insufficient to create a genuine issue for trial.

First and foremost, Napier has mischaracterized her own deposition testimony in an apparent effort to bolster her version of the conversation with Bouye and lend credence to

---

[4] "Reckless disregard means that the officer 'entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" Ogborne v. Brown, 2000 WL 764928, at *7 n.13 (E.D. Pa. June 13, 2000), quoting United States v. Clapp, 46 F.3d 795, 801 n.6 (8th Cir. 1995).

Lagnese's alleged admission. Review of Napier's deposition transcript, however, demonstrates that when Napier asked Bouye why Lagnese would not speak up, Bouye said *he didn't know*. It was *Napier* herself who then went on to say that *she* "thought" that "maybe [Lagnese] just didn't want to look embarrassed in front of his peers." [Napier Depo., p. 66]. Napier's musings in this regard, however, are purely speculative and have absolutely no basis in the record.

In addition, there is nothing in the record which would otherwise substantiate Napier's testimony regarding Bouye's alleged statement. The uncontroverted evidence of record shows that Lagnese not only had probable cause to arrest Napier, having personally compared her photograph to the woman who he observed selling the drugs, but he and Bouye determined that the seller's unsubstantial weight difference after three and a half months was not sufficient to draw the previous identification into question. Moreover, Napier herself has conceded that she looks exactly like a known drug dealer in the area. Napier has not offered any evidence to counter these facts nor any which would render Lagnese's alleged admission to Bouye plausible.[5] Indeed, the only competent evidence offered by Napier is the fact that she was later exonerated which, as previously discussed, is irrelevant to the validity of her arrest. <u>Johnson v. Campbell</u>, 332 F.3d at 211.

---

[5] The balance of the record on the issue shows that Bouye testified that he does not recall the meeting and denies that he was ever informed by Lagnese or anyone else that Lagnese recognized that Napier was the wrong person or that he ever told Napier that Lagnese had told him that. [Bouye Depo., pp. 52-53, 56]. Lagnese recalled a meeting taking place at which time Bouye explained the results of the polygraph to Napier. When asked, however, what else may have been said, Lagnese testified, "I don't remember what she may have said to [Bouye] or he said to her. I don't want to misstate or misspeak." [Lagnese Depo., pp. 54-55].

While the court is cognizant of the fact that in deciding a motion for summary judgment "it is not the role of the trial judge 'to weigh the evidence and determine the truth of the matter,'" neither may a plaintiff "manufacture an issue of disputed fact by relying 'upon mere allegations, general denials, or [ ] vague statements.'" Stiles v. Synchronoss Technologies, Inc., 2008 WL 3540483 at *3 (E.D. Pa. Aug. 12, 2008), quoting Anderson v. Lobby, 477 U.S. 242, 250 (1986), and Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir.1991). See also Blair v. Scott Specialty Gases, 283 F.3d 595, 608 (3d Cir.2002) ("[C]onclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.").

Here, as in Stiles, Napier reliance on nothing but her own self-serving assertion does not serve to create a material issue of fact in light of the undisputed record evidence submitted by defendants and Napier's own admission regarding her appearance. See Anderson v. Liberty Lobby, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [plaintiffs'] position will be insufficient; there must be evidence on which the jury could reasonably find for the [plaintiffs]").

Having concluded that the record is devoid of any evidence from which a jury could reasonably conclude that the individual defendants lacked probable cause to arrest Napier or that they recklessly disregarded the truth surrounding her identity, it follows that Napier is unable to sustain her claims for malicious prosecution under § 1983 against either the individual defendants or the City of New Castle.

The court notes, however, that even if Napier could establish her claims against the individual defendants, the City of New Castle would still be entitled to summary judgment. It is well settled that a municipality may not be held liable under § 1983 merely because its

employees have acted unconstitutionally. Rather, a municipality may only be found liable for their own illegal acts or where the plaintiff is able to identify a municipal "policy" or "custom" that caused the constitutional violation. Commissioners of Bryan County v. Brown, 520 U.S. 397, 403 (1997). See Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978); Pembaur v. Cincinnati, 475 U.S. 469 (1986).

> Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. . . . Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

Commissioners of Bryan County v. Brown, 520 U.S. at 403-04 (citations omitted).

Here, Napier has not pointed to any evidence which speaks to a municipal custom or policy. Rather, Napier argues that a policy of allowing an investigation to continue even when it compromises a person's constitutional rights can be inferred from the fact that in this case defendants did nothing after Lagnese realized Napier was not the woman he had witnessed selling drugs. In other words, because the individual defendants in this case did nothing to correct the situation, Napier concludes it must be the policy of the police department. This is the equivalent, however, of asking the court to hold the City liable merely because its employees acted unconstitutionally and is clearly not the law. Id. Absent evidence that there was either a legislated policy or a widespread practice of such violations, Napier has not met her burden and the City of New Castle is entitled to summary judgment.

D.   Conclusion

For these reasons, it is respectfully recommended that defendants' motion for summary judgment [Dkt. 34] be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections and responses thereto in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/  Amy Reynolds Hay
United States Magistrate Judge

Dated: 2 March, 2009

cc:   Hon. Gary L. Lancaster
      United States District Judge

cc:   All counsel of record by Notice of Electronic Filing